Dorothy WALLS, et al., Plaintiffs,

v.

MISSISSIPPI STATE DEPARTMENT OF PUBLIC WELFARE, et al., Defendants.

UNITED STATES of America, Plaintiff,

v.

MISSISSIPPI STATE DEPARTMENT OF PUBLIC WELFARE, et al., Defendants.

Civ. A. Nos. GC 73–5–WK, GC 75–108–WK.

United States District Court, N.D.Mississippi, Greenville Division.

April 4, 1985.

Johnnie E. Walls, Jr., Greenville, Miss., for plaintiffs.

Barbara A. Morris, National Employment Law Project, New York City.

Cynthia Drabek, U.S. Dept. of Justice, Employment Litigation Section, Washington, D.C., for U.S.

Thomas E. Childs, Jr., Fulton, Miss., Edwin L. Pittman, Atty. Gen. of Miss., Jackson, Miss., for state defendants.

## ORDER

KEADY, District Judge.

The state defendants move for summary judgment on the limited issue that they are immune to back pay and other relief to claimants aggrieved by the written examination process for the time period from May 1973 to December 1, 1976. It was during this period that the state employed unvalidated written examinations and a certificate of eligibles based upon the scores made on the tests for employment of Clerks, Eligibility Workers and Social Workers. The defendants contend that if they are not entitled to summary judgment an evidentiary hearing should be scheduled to more fully develop the issue. Private plaintiffs and the Government, in turn, move for cross-summary judgment and argue that the state defendants have failed to satisfy the legal requirements for using unvalidated examinations as a basis for employment; they also argue that the record already made is sufficient to dispose of the issue without necessity of further hearing.

As this court has previously held, state defendants' use of an unvalidated examination for the three positions in the Welfare Department violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* Under EEOC Guidelines in effect during 1972–76, an employer may not be liable for provisional use of an unvalidated examination in some "very limited circumstances." *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 436, 95 S.Ct. 2362, 2380, 45 L.Ed.2d 280 (1975); *Ensley Branch of NAACP v. Seibels,* 616 F.2d 812, 823–24 (5th Cir.), *cert. denied sub nom., Personnel Board of Jefferson County v. United States,* 449 U.S. 1061, 101 S.Ct. 783, 66 L.Ed.2d 603 (1980). The precise issue is whether the defendants in this case may be relieved of the consequences of using unvalidated examinations in its employment practices.

Defendants claim an immunity on the basis of 29 C.F.R. § 1607.9 (1970) which, in effect at the time, provided as follows:

> Under certain conditions, a person may be permitted to continue the use of a test which is not at the moment fully supported by the required evidence of validity. If, for example, determination of criterion-related validity in a specific setting is practicable and required but not yet obtained, the use of the test may continue: Provided: (a) The person can cite substantial evidence of validity as described in § 1607.7(a) and (b); and (b) he has in progress validation procedures which are designed to produce, within a reasonable time, the additional data required. It is expected also that the person may have to alter or suspend test cutoff scores so that score ranges broad enough to permit the identification of criterion-related validity will be obtained.

For the above code section to apply, a party must establish two requirements: first, "substantial evidence of validity" of the testing procedure and, second, that he "has in progress validation procedures which are designed to produce, within a reasonable time, the additional data required." The burden, of course, is upon

the state defendants to come within C.F.R.'s § 1607.9 exemption. Moreover, "substantial evidence of validity" must be judged by special requirements of C.F.R. § 1607.7, which provides that where it is not feasible to conduct a proper validation study

> evidence from validity studies conducted in other organizations, such as that reported in test manuals and professional literature, may be considered acceptable when: (a) The studies pertain to jobs which are comparable (i.e., have basically the same task elements), and (b) there are no major differences in contextual variables or sample composition which are likely to significantly affect validity. Any person citing evidence from other validity studies as evidence of test validity for his own jobs must substantiate in detail job comparability and must demonstrate the absence of contextual or sample differences cited in paragraphs (a) and (b) of this section.

"Substantial evidence of validity," therefore, had to include studies of the challenged examinations which would tend to show that they might be validly used by the employer, with some substantiation of comparability between jobs that were studied and the employer's jobs for which testing was used. The state defendants knew as early as 1971 that the examination process being utilized had a disparate impact on blacks. Even so, the record establishes that as late as May 1973 the defendants had not initiated any studies to ascertain whether the examination process was job related or whether the testing being utilized was at all proper. The defendants called upon officials of the United States Civil Service Commission to assist them in preparing test materials for Clerk and Social Worker positions, and the materials furnished by these officials were then used in testing. It was known by all that the materials were unvalidated, and the information provided by the Civil Service Commission representatives consisted of certain questions that were developed by subject matter experts. The federal officials did not represent that the questions were the result of a validated process. Instead, those officials advised the state defendants to review "the suggested examinations for use appropriate to your needs, in accordance with applicable federal standards." The Welfare Department next furnished certain information about job duties to the Civil Service Commission, which took no action other than to recommend that the State Merit System re-evaluate its examination process. This occurred in August 1973. Thereafter, Director McCarthy of the State Welfare Department assumed that the test questions supplied by the Civil Service officials were adequate, and he chose to place them into effect without critical review or analysis of any kind. The state defendants used substantially the same test questions for Eligibility Worker positions as had been supplied for the Clerk and Social Worker jobs. The federal officials supplied no test questions for Eligibility Worker positions.

The state defendants now contend that the failure of the Civil Service Commission to advise against the continued use of the examinations and certificates of eligibles from May 1973 until December 1, 1976, when they were suspended, constitutes reliance upon the test questions furnished by the Civil Service Commission as "substantial evidence of validity" of the procedure. We disagree. The federal officials, in furnishing the test questions, specifically advised the state defendants to have the material evaluated in accordance with federal standards, which were controlled by the EEOC Guidelines. The Civil Service Commission, of course, was not authorized to vary the EEOC Guidelines which were binding upon the state defendants. Other than to delete certain questions proposed by the Civil Service Commission, the state defendants made no substantive review of the material supplied by representatives of the Civil Service Commission and as stated, used the same information for the Eligibility Worker position. Neither does it appear that any comparison was made of the positions for which the questions were framed by Civil Service representatives and the job

positions within the Welfare Department for which the tests would be used. In any event, no validation study as such was ever undertaken by the federal officials, and the state defendants present no evidence that during the time period involved they employed experts to advise them on the basis of validity studies in other organizations that their testing procedure might be utilized pending the completion of a validity study. Under these circumstances, it is clear that the state defendants are unable to show any substantial evidence that the testing procedures employed by them were valid.

Neither can it be said that the state defendants in 1973–76 had in place an on-going validation procedure designed to produce data as to the validity of the examinations that were being used. McCarthy acknowledged that the data then being collected concerned only information about functions and duties of certain job classifications, and a job analysis was done by a psychologist, Dr. Hanby. Beyond the job analysis, the state defendants had no further procedure in progress during the time frame involved and therefore, had no plan or procedure "designed to produce, within a reasonable time, the additional data required [§ 1607.9]."

The only occasion in which the state defendants sought to make a validation study of its testing procedures occurred in 1977 after the examinations were suspended and a firm of experts was employed for litigation purposes. It is clear that the state defendants failed to establish any of the conditions to justify a continued use of unvalidated examinations within the purview of 29 C.F.R. § 1607.9 (1970). Since the uncontradicted facts, as shown by the record and as found by this court, permit no other conclusion, no useful purpose will be served by ordering an evidentiary hearing on the immunity defense.

The motion of the state defendants for summary judgment or alternatively for an evidentiary hearing is DENIED, and the cross-motions of the United States and private plaintiffs for summary judgment in their favor on the immunity issue are SUSTAINED.